A. THOMAS MARAS, Adm'r of the Estate of Laura Maras, Deceased, Plaintiff-Appellant, *v.* CLAUS BERTHOLDT *et al.*, Defendants-Appellees.

Second District   No. 2—82—0942

Opinion filed August 8, 1984.

William F. Fitzpatrick, of Callahan & Fitzpatrick, of Oak Lawn, for appellant.

Myron J. Hall, Ltd., and Markham Jeep, of Charles M. May, Ltd., both of Waukegan, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, A. Thomas Maras, administrator of the estate of Laura Maras, appeals from an order of the circuit court of Lake County partially granting the summary judgment motion of defendants-appellees Gilbert McCormick, Sr., and Gilbert McCormick, Jr., d/b/a McCormick's Restaurant and Lounge, and from the subsequent order dismissing his dramshop action against defendants for the fatal injuries sustained by decedent. As bases for this appeal, plaintiff contends that the trial court: (1) erred in determining as a matter of law that decedent's parents were unable to recover for injuries to means of support and loss of services rendered by decedent; (2) improperly considered an affidavit supporting a summary judgment motion which contained hearsay; (3) erred in precluding plaintiff from maintaining an action for decedent's personal injuries and property damage; and (4) improperly concluded that the dramshop action did not survive the death of the decedent. We affirm the trial court's entry of summary judgment in favor of defendants, but reverse its order dismissing plaintiff's dramshop action for pain and suffering and remand for reinstatement of that portion of plaintiff's complaint.

On September 30, 1979, decedent was killed in an automobile accident involving a vehicle driven by defendant Kevin Autry and a vehicle owned by defendant Claus Bertholdt. Prior to the accident, Bertholdt and decedent Maras had been at McCormick's Restaurant and Lounge in Lake Forest, Illinois. The parties disputed in the trial court whether Bertholdt or Maras drove the car after leaving the tavern.

As a result of Maras' death, plaintiff filed a complaint against Autry, Bertholdt, and the McCormicks. Count V of the complaint sought relief from defendants Gilbert McCormick, Sr., and Gilbert McCormick, Jr., d/b/a McCormick's Restaurant and Lounge, for the sale of alcoholic beverages to Bertholdt causing his intoxication, which there-

after resulted in decedent's death. Count V further alleged a right of recovery for decedent's personal injuries, for property damages incurred (medical and funeral expenses), and for the parents' loss of the means of support of their daughter. After considering memoranda filed by the parties, the trial court on August 26, 1981, partially granted defendants' motion for summary judgment, ruling as a matter of law that decedent did not render any actual support to plaintiffs and that funeral and medical expenses were not recoverable because decedent was an adult and therefore, the family expenses act (Ill. Rev. Stat. 1981, ch. 40, par. 1015) was inapplicable.

On the day of trial, defendants filed a motion to dismiss the remaining portion of count V, alleging that no recovery for personal injury of decedent could be obtained because the action did not survive decedent's death. The trial court granted defendants' motion.

During the course of the trial, plaintiff entered into a settlement agreement for $60,000 with Autry and the trial court dismissed the survival and wrongful death action against Autry. At the conclusion of trial, but prior to submitting the case to the jury, the trial court granted Bertholdt's motion for a directed verdict on the survival action. Plaintiff proceeded to verdict against Bertholdt in the wrongful death count and was awarded $100,000, and the trial court entered judgment on that verdict.

On petition of Bertholdt, the trial court ruled plaintiff could not allocate any portion of the $60,000 settlement with Autry to the survival action and thus, Bertholdt was entitled to set off against the $100,000 verdict the entire $60,000 paid by Autry for a covenant not to sue. On November 10, 1982, a satisfaction of judgment was filed indicating Bertholdt's tender of $40,468.50 in acceptance and release of judgment by plaintiff. On September 27, 1982, plaintiff filed a motion for a new trial which was denied on November 3, 1982. Plaintiff filed a notice of appeal on November 30, 1982.

The initial question concerns defendants' motion filed in February 1983 seeking dismissal of this appeal. Defendants contend plaintiff failed to file his notice of appeal within 30 days of the court's order granting defendants' motion to dismiss count V of plaintiff's complaint. Plaintiff responds that he received no notice of the August 23, 1982, written order and therefore, his notice of appeal filed subsequent to the close of trial properly raises the dismissal of count V before this court.

We are unpersuaded by defendants' contention that plaintiff's appeal should be dismissed. The disputed order was entered by the court on August 23, 1982, dismissing the remaining portion of count V of

plaintiff's complaint seeking recovery for decedent's pain and suffering prior to her death. Defendants presented the motion to dismiss on August 23, 1982, immediately prior to trial, which the court orally granted in the presence of attorneys for both plaintiff and defendants. The oral order did not contain the finding that there existed no just reason to delay enforcement or appeal. The trial court did not specify whether a written order should be drafted incorporating the terms of his oral order. The record, however, contains a written order filed August 23, 1982, granting defendants' motion to dismiss but also including the Rule 304(a) language (73 Ill. 2d R. 304(a)).[1] Defendant filed a motion for a new trial on September 27, 1982, more than 30 days after entry of the August 23 written order, and the trial court specifically denied on November 3, 1982, plaintiff's post-trial request for reinstatement of count V because his motion "was not filed within thirty (30) days of a final and appealable order disposing of count V in its entirety."

Based upon these facts, defendants filed a motion to dismiss plaintiff's appeal regarding count V which this court initially granted. After plaintiff filed objections to the dismissal order, this court ordered that the motion to dismiss be heard with this case. Attached to plaintiff's objections is an affidavit of his attorney, William Fitzpatrick, wherein Fitzpatrick stated "[h]e was never served with a copy of the attached order dated August 23, 1982, and was never aware of its existence until he received a copy of it attached to Defendant McCormick's Motion to Dismiss this Appeal." Fitzpatrick further stated the only dismissal order of which he was aware was that entered orally on August 23, 1982, which did not contain Rule 304(a) language.

Defendants' attorney, Markham M. Jeep, filed an affidavit attached to the motion to dismiss the appeal in which he states only that the papers attached to the motion to dismiss the appeal are true and correct copies. Since Jeep's affidavit does not contradict any of the statements in plaintiff's affidavit, we accept as true that plaintiff did not receive notice of the August 23, 1982, written order which included the critical Rule 304(a) language, and did not become aware of the existence of that order at least until the trial court denied his post-trial motion in November 1982.

---

[1]During oral argument, counsel for defendants McCormicks acknowledged the existence of a standing rule of the trial judge presiding in the instant case that all oral orders be reduced to writing for his signature before noon of the day the order was issued. Therefore, pursuant to Supreme Court Rule 272 (73 Ill. 2d R. 272), the written order signed by the trial judge and not the oral order became the final order for purposes of our consideration.

■ While Supreme Court Rule 271 (73 Ill. 2d R. 271) places the responsibility on the successful movant for drafting a written order, here the written order contains the Rule 304(a) language which was not present in the court's oral order. The addition of the Rule 304(a) language was a substantive change in the trial court's oral order amounting to the equivalent of a new order. Prior to entry of a new order, a party must give notice that a motion will be presented to the court. (*Cf. Vlahakis v. Parker* (1971), 3 Ill. App. 3d 126, 278 N.E.2d 523 (abstract of opinion).) Absent such notice, the order is void. Because plaintiff did not receive notice of the written August 23, 1982, order containing the Rule 304(a) language, that order was void and thus was not capable of triggering the 30-day time period. The oral order of August 23, 1982, similarly did not trigger the appeal, because, even though final, the order did not contain the requisite 304(a) language and thus was not appealable. Since neither order initiated the 30-day period, plaintiff's notice of appeal filed within 30 days of the trial court's denial of his motion for a new trial effectively conferred jurisdiction on this court.

■ Defendants also assert that this appeal should be dismissed because plaintiff proceeded to verdict on claims based in the wrongful death action (count III) and because plaintiff executed a release of satisfaction of judgment in favor of codefendant Bertholdt. Therefore, defendants argue, the issues raised by plaintiff's appeal are moot. However, defendants cite no authority for their contention, and thus, this court can consider it waived. (See *Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 418 N.E.2d 56; 73 Ill. 2d R. 341(e).) While defendants in their motion to dismiss appeal assert that they joined in and adopted the arguments and authorities proposed by Bertholdt in his December 14, 1982, motion, this statement cannot avoid operation of the waiver rule. For even if such an incorporation by reference is effective, defendant failed to cite this court in his motion to the portion of the record where this document can be found. Absent proper citation to the record, defendant has waived the mootness argument. See 87 Ill. 2d R. 341(e)(7).

■ Even if the merits of defendants' mootness contention are addressed, the cases cited by plaintiff are persuasive support for the conclusion that this appeal is not moot. In *Slone v. Morton* (1963), 39 Ill. App. 2d 495, 188 N.E.2d 493, the court concluded that causes of action predicated on the Wrongful Death Act and the Dramshop Act were separate and distinct and thus, payment by certain defendants under the wrongful death count did not preclude recovery on the dramshop count. Similarly, this court in *Kurth v. Amee, Inc.* (1972), 3

Ill. App. 3d 506, 278 N.E. 2d 162, held that a plaintiff's execution of a covenant not to sue the allegedly drunk driver did not preclude her from suing the taverns under the Dramshop Act. As the *Kurth* court stated: "It is not realistic to conclude that the amount received for a covenant not to sue one of the several tort-feasors can be equated with the actual damages sustained by the covenantor." (3 Ill. App. 3d 506, 510, 278 N.E.2d 162, 165.) Based upon *Slone* and *Kurth*, plaintiff's appeal is not mooted by the verdict on count III and the subsequent covenant not to sue.

Relying upon the language of the Dramshop Act (Ill. Rev. Stat. 1981, ch. 43, par. 135), plaintiff seeks recovery for medical and funeral expenses incurred as a result of decedent's injuries and subsequent death. Section 14 of article VI of the Dramshop Act (Ill. Rev. Stat. 1981, ch. 43, par. 135) provides: "Every person who is injured in person or *property* by any intoxicated person has a right of action ***."(Emphasis added.) Plaintiff asserts the medical and funeral expenses constitute property within the meaning of the Dramshop Act, and since section 27—6 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 27—6) provides that dramshop actions do not abate upon the death of the decedent, plaintiff here can maintain this action for damages to property on behalf of the estate. The trial court in entering summary judgment in favor of defendants stated that plaintiff's property damage claim in the nature of medical and funeral expenses was deficient because decedent was an adult child and thus, her parents were not obligated under the family expenses act (Ill. Rev. Stat. 1981, ch. 40, par. 1015), to pay these expenses.

■ The parties have not cited, nor can we find, any Illinois decision which addresses precisely the issue in this appeal. The court, however, addressed a similar question in *Angeloff v. Raymond* (1979), 70 Ill. App. 3d 594, 388 N.E.2d 1128. There, the mother of the decedent brought suit under the Dramshop Act to recover for the medical and funeral expenses of her son, which allegedly amounted to injury to her property. This court relied upon an earlier decision, *Ragan v. Protko* (1978), 66 Ill. App. 3d 257, 383 N.E.2d 745, which held that a parent could not recover under the Dramshop Act for his child's medical and funeral expenses because the child was an adult and therefore, the parents had no legal obligation to pay these expenses. (*Ragan v. Protko* (1978), 66 Ill. App. 3d 257, 261, 383 N.E.2d 745, 748.) Since the mother in *Angeloff* similarly failed to establish she was under any legal obligation to pay her adult son's medical and funeral expenses, the *Angeloff* court concluded, summary judgment was entered properly in favor of the owner and lessee of the tavern. As plaintiff

points out, however, *Angeloff* and *Ragan* only concern a parent's action for injury to property. Here, in contrast, plaintiff as administrator of decedent's estate is suing for injury to the estate's property. While the estate is under a legal obligation to pay decedent's medical and funeral expenses, in the instant case defendants contend and plaintiff does not dispute that the expenses were paid by decedent's parents, not her estate. Therefore, since the estate has suffered no injury to its property, we conclude the trial court's entry of summary judgment in favor of defendants was proper.

Plaintiff next contends the trial court erred in granting defendants' motion for summary judgment after concluding that the parents of the decedent were not injured in their means of support as a matter of law. Section 14 of article VI of the Dramshop Act provides that a cause of action will lie for injuries to means of support caused by an intoxicated person. (Ill. Rev. Stat. 1981, ch. 43, par. 135.) Plaintiff argues that support should be broadly defined and points to testimony indicating decedent voluntarily performed domestic duties whenever she came home from college and also assisted her father in his business in her sophomore and junior years in high school and during the summers when she was 15 and 16 years old. In support of his position, plaintiff relies upon *Weiner v. Trasatti* (1974), 19 Ill. App. 3d 240, 311 N.E.2d 313. In *Weiner*, the husband as executor of his wife's estate filed suit against the owners and operators of a dramshop, who served alcoholic beverages to the driver of the automobile, who subsequently drove his car and killed plaintiff's wife. In reversing the directed verdict for the defendant, the court held the jury should have been allowed to consider whether the husband and children were injured in their means of support. As the *Weiner* court stated:

> "The capacity for providing means of support may be shown by proof of earnings and contribution of services or income. [Citations.] The services of a wife to which a husband is entitled include those rendered by the wife in performance of her household and domestic duties, as well as those rendered by her while assisting the husband in his business." 19 Ill. App. 3d 240, 246, 311 N.E.2d 313, 319.

While this language could arguably be construed as support for plaintiff's position, the wife in *Weiner* provided much more than domestic services: the wife had been employed for four years previous to her death with an outside employer and had worked with her husband in furthering their corporate fishery and delicatessen business, the stock of which was jointly held by both the husband and wife. Also significant is the absence in *Weiner* of any evidence that the hus-

band was providing for all of his wife's monetary needs. In contrast, plaintiff here admitted he was providing all of the support for his daughter prior to her death.

Defendants rely upon several cases which suggest decedent's contributions were not sufficient to amount to "means of support" under the Dramshop Act. In *Stevens v. B&L Package Liquors, Inc.* (1978), 66 Ill. App. 3d 120, 383 N.E.2d 676, the father filed suit against certain dramshops after his wife and daughter were killed by an intoxicated motorist. In one count of his complaint, the plaintiff claimed injury to his means of support by reason of the death of his 12-year-old daughter. The court described the daughter's services:

> "In 1973, when Karen had attained the age of 10, she began to take an active role in the management of the Stevens household. Not only did Karen assume sole responsibility for the care of her younger brothers, but she prepared the morning and evening meals, washed the bulk of the family's clothes and performed most of the general household duties such as doing dishes and making beds." (66 Ill. App. 3d 120, 122, 383 N.E.2d 676, 677.)

Notwithstanding the evidence of the daughter's domestic contributions, the court affirmed the trial court's summary judgment order in favor of the dramshops. The *Stevens* court stated that previous Illinois decisions had held that support was "measured in such tangibles as the loss of wages and inability to continue earning a living, and not routine domestic chores and services." (66 Ill. App. 3d 120, 123, 383 N.E.2d 676, 678.) In so holding, the court concluded that *Weiner* was no authority for plaintiff's support action as its statement that domestic services constituted means of support "was clearly dicta and not controlling." *Stevens v. B&L Package Liquors, Inc.* (1978), 66 Ill. App. 3d 120, 124, 383 N.E.2d 676; see also *Martin v. American Legion Post #784* (1978), 66 Ill. App. 3d 116, 119, 383 N.E.2d 672, 675 ("The *Weiner* case does not stand for the proposition that the performance of everyday domestic chores is sufficient to maintain a 'means of support' action under the Dramshop Act."); Annot., 4 A.L.R.3d 1332 (1965).

Plaintiff unpersuasively distinguishes *Martin* and *Stevens* on the bases that in those cases the children were minors and the contributed services were limited to domestic chores. We fail to see how the age of the provider of the service is determinative of whether the service constitutes a means of support. Also, plaintiff's reliance here on decedent's contribution to the family business in addition to her family chores is unpersuasive, for this court rejected a similar con-

tention in *Penoyer v. Hare* (1979), 76 Ill. App. 3d 225, 394 N.E.2d 1082. There, the father of the decedent filed a dramshop suit individually and as administrator of the estate of his son alleging loss of means of support. The decedent had rendered certain services to the family business and participated in the family's farming operations. In affirming the trial court's summary judgment order in favor of the dramshop, the *Penoyer* court stated, "it appears that rather than contributing to the support of the family, the decedent was in fact the recipient of support from the family itself in return for his efforts concerning the family business and family farm." (76 Ill. App. 3d 225, 227, 394 N.E.2d 1082, 1084.) Similarly, while decedent performed occasional services for plaintiff's business, the uncontradicted testimony of plaintiff demonstrates the parents provided all of decedent's support amounting to between $7,000 and $8,000 annually. Therefore, the trial court properly entered summary judgment in favor of defendants on plaintiff's claim for injury to means of support.

Plaintiff also argues the summary judgment order was improper because the trial court erroneously considered an affidavit filed by defendants' counsel in support of the motion. Markham M. Jeep, as attorney for defendants, stated by affidavit that he was present at a deposition held on April 14, 1981, at which A. Thomas Maras testified in sum and substance: (1) he was the father of the deceased; (2) she was a full-time student at Barat College in Lake Forest and lived alone prior to her death; (3) her last employment was as a part-time retail sales clerk; (4) income from this employment was utilized by decedent for her personal living expenses and never was used to support any member of the Maras family; and (5) decedent was 21 years old at the time of her death and last lived with her parents in 1976. While not challenging the veracity of the facts stated in the affidavit, plaintiff contends the affidavit is defective because Jeep could not testify competently as to the facts in the affidavit.

■ We need not consider this challenge to the affidavit, however, because attached to defendants' summary judgment memorandum were plaintiff's answers to defendants' interrogatories, which contained the information recited in the affidavit challenged here by plaintiff. In the interrogatories, Mr. Maras stated that decedent was a full-time student at the time of her death, had earned between $1,500 and $2,500 yearly for the five years preceding her death, and decedent was not contributing to the support of any collateral heir and was not living at home at the time she died. The interrogatories further recited that decedent had part-time employment during the summer for three years prior to her death, was not contributing monetary

support to any lineal heir, and Maras and his wife did not suffer actual pecuniary loss because of the loss of support and services of their daughter. Based upon these Interrogatory answers, we conclude the record contains sufficient evidence from which the trial court could determine as a matter of law that decedent had not contributed monetary support to her parents and thus, that plaintiff had failed to demonstrate injury to means of support under the Dramshop Act.

The final issue raised by plaintiff is whether the trial court erred in dismissing that portion of count V of plaintiff's complaint seeking recovery from defendants for decedent's pain and suffering. Illinois has never recognized a common law remedy against the supplier of liquor. *Demchuk v. Duplancich* (1982), 92 Ill. 2d 1; *Thompson v. Trickle* (1983), 114 Ill. App. 3d 930, 449 N.E.2d 910.

■ The language of the Dramshop Act does not indicate clearly whether an injured person can maintain an action for personal injuries against a tavern. Courts interpret the Dramshop Act strictly because the act is penal in nature. (*Miller v. Owens-Illinois Glass Co.* (1964), 48 Ill. App. 2d 412, 199 N.E.2d 300.) The statute begins: "Every person who is injured in person or property by an intoxicated person has a right of action ***." (Ill. Rev. Stat. 1981, ch. 43, par. 135.) While this sentence can be read as authorizing an action based upon personal injury, another interpretation is that the injury to person or property is a prerequisite to maintaining a cause of action, but is not the basis for recovery. However, this court in *Angeloff v. Raymond* (1979), 70 Ill. App. 3d 594, 388 N.E.2d 1128, entertained a cause of action based upon injury to property under the Dramshop Act. Therefore, the language "injury to person or property" does not appear to be merely a precondition to, but rather is the basis for a cause of action predicated on the Dramshop Act. Additionally supportive of the position that a personal injury action can be maintained is the language appearing at the end of section 14 of article VI of the Dramshop Act: "In no event shall the judgment or recovery under this Act for injury to the person or to the property of any person as aforesaid exceed $15,000, and recovery under this Act for loss of means of support resulting from the death or injury of any person, as aforesaid, shall not exceed $15,000 for each person so injured ***." (Ill. Rev. Stat. 1981, ch. 43, par. 135.) By making this distinction between injury to person or property on the one hand and injury to means of support on the other, the statute authorizes a distinct cause of action for personal injuries. Therefore, while the language of section 14 of article VI addresses almost exclusively an action for loss of means of support, we read that statute as authorizing an action based

upon personal injury.

Furthermore, some case authority implicitly recognizes a cause of action against a dramshop for the injured plaintiff's personal injuries, including pain and suffering. For example, in *Demikis v. One Cent Club, Inc.* (1943), 319 Ill. App. 191, 48 N.E.2d 782, the plaintiff-patron sued the dramshop for personal injuries he received when the bar's bouncer struck the plaintiff, breaking his jaw. On appeal, the dramshop in part argued that the trial court erroneously instructed the jury that in awarding damages it could consider " 'the nature and extent of plaintiff's physical injuries, if any, so far as they are shown by the evidence; *his pain and suffering if any, resulting from such injuries*, any permanent injury or disfigurement to his face or impairment and the loss of use of his jaws if any.' " (Emphasis added.) (319 Ill. App. 191, 198, 48 N.E.2d 782, 785.) The *Demikis* court held that the language "permanent injury or disfigurement" in the instruction was not too speculative to constitute error and, therefore, affirmed the judgment of the trial court. Similarly, in *Shiflett v. Madison* (1969), 105 Ill. App. 2d 382, 245 N.E.2d 567, the plaintiff sued the dramshop for injuries resulting when another patron who was intoxicated struck the plaintiff. The trial court instructed the jury to consider the " '*** pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries.' " (105 Ill. App. 2d 382, 385, 245 N.E.2d 567, 569.) The court ruled as error the fact that the plaintiff's husband received $15,000 for his personal injuries while his wife recovered $8,000 for loss of her husband's support, because this amounted to a double recovery as to the item of lost earnings. Like the court in *Demikis*, however, the *Shiflett* court did not rule that the pain and suffering instruction was error. We therefore conclude decedent could have maintained a cause of action for her personal injuries, including pain and suffering against the dramshop had she lived.

The question which remains is whether such an action survives so that her estate can maintain the action after her death. The Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 27—6 ) (Survival Act) states that actions provided for in section 14 of article VI of the act relating to alcoholic liquor (Ill. Rev. Stat. 1981, ch. 43, par. 135) survive the death of the decedent. The Survival Act does not create a new cause of action, but simply allows the personal representative of the decedent to maintain any statutory or common law action available to decedent at the time of his death. (*National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160.) "The Survival Act shields from abatement only those claims which are specifically set forth in it;

which claims abate and which survive is the result of legislative judgment to which this court is not free 'to annex new provisions or substitute different ones' or provide exceptions, limitations or conditions which are different than the plain meaning of the statute." *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324, 334, (citing *Belfield v. Coop* (1956), 8 Ill. 2d 293, 306-07).

The only case cited by defendants in support of their contention that a pain-and-suffering cause of action does not survive is *Howlett v. Doglio* (1949), 402 Ill. 311. There, the mother of the decedent filed suit against the dramshop for damage to her property incurred when an intoxicated patron left the dramshop, operated his vehicle and subsequently struck the plaintiff's daughter, who died from these injuries. The plaintiff argued "the interest which nature and our form of society gives to each person in his lineal next of kin" was "property" within the purview of the Dramshop Act. The supreme court stated the plaintiff had a cause of action under the Wrongful Death Act for "pecuniary injuries" but that such injuries were not synonymous with "injury to property" under the Dramshop Act. Emphasizing the different purposes and objectives of the two statutes, the *Howlett* court held property under the Dramshop Act meant tangible and real property and did not include "pecuniary injuries" as expressly provided for in the Wrongful Death Act.

Defendants contend that from *Howlett* has emerged the broad general principle that no survivorship action exists under the Dramshop Act. Recently, however, our supreme court in *Elliott v. Willis* (1982), 92 Ill. 2d 530, questioned some of the language in *Howlett*. In concluding that a jury may consider the loss of decedent's society by the widow and next of kin as pecuniary injuries under the Wrongful Death Act, the court labeled as "implicitly overruled" the language in *Howlett* defining pecuniary injuries as a material loss susceptible of pecuniary valuation. (92 Ill. 2d 530, 537.) Thus, the continuing viability of *Howlett* is debatable. More important, *Howlett* is not determinative of the issue presented in the case at bar. *Howlett* construed the "property" language of the Dramshop Act and concluded the mother could not recover damages for loss of her daughter as an injury to the mother's property. This conclusion, however, does not preclude plaintiff's recovery theory here, which is based upon personal injury to decedent represented in this action by plaintiff.

■ Defendant's argument that plaintiff has not cited a case authorizing such an action does not *ipso facto* establish that no such action exists. Admittedly, almost all of the dramshop cases concern actions for loss of means of support. Our supreme court in *Howlett v.*

*Doglio* (1949), 402 Ill. 311 recognized this: "In many, if not all, instances, actions brought under the act have been predicated upon injury to 'means of support' resulting from the husband's loss of earning power or his death." (402 Ill. 311, 318-19.) In *Heldt v. Brei* (1983), 118 Ill. App. 3d 798, 455 N.E.2d 842, the special administrator of the decedent's estate sued the hosts of a party under the Dramshop Act for serving alcohol to a person who subsequently operated his car and ran over decedent. While the *Heldt* court affirmed the dismissal of the survival action because the hosts were not in the business of selling alcohol for a profit, the court implicitly accepted the availability of the survival action had the defendants been dramshop operators. The language of the Probate Act of 1975 does not provide for survival only of actions based upon loss of means of support, but rather states that actions based on section 14 of article VI of the Dramshop Act (Ill. Rev. Stat. 1981, ch. 43, par. 135) can be maintained by the decedent's estate. Since plaintiff's claim for injuries to decedent's person is based upon section 14 of article VI, we conclude the plain language of the Probate Act of 1975 provides that all actions, including those based on injury to person, survive the death of the decedent.

Based upon our previous conclusions that decedent could have maintained an action against defendants for injury to her person had she lived and that this action survived her death, we next consider whether the trial judge correctly dismissed count V on the morning of trial without hearing evidence on plaintiff's injury-to-person claim. A motion to dismiss admits facts well pleaded, and all reasonable inferences which can be drawn from those facts, but only for the purpose of determining whether, as a matter of law, those facts state a claim upon which relief may be granted. (*Cross v. Chicago Housing Authority* (1979), 74 Ill. App. 3d 921, 393 N.E.2d 580, *aff'd sub nom. Cross v. Wells Fargo Alarm Services, Inc.* (1980), 82 Ill. 2d 313.) A court should not dismiss an action on the pleadings unless it appears that no set of facts can be proved which would entitle the pleader to relief. *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972, 387 N.E.2d 785.

In granting defendant's motion to dismiss the remaining portion of count V of plaintiff's complaint concerning decedent's personal injuries, the trial court was concerned with allowing recovery for the brief time period during which decedent may have survived the accident.

> "Maris [*sic*] died about 3 hours after the accident and there was no question that she was never conscious when anybody saw her, after the accident, and so on the survivorship action,

which has to do with her pain and suffering, I am going to grant the Motion to dismiss, take the dram out because it does not survive. The reason that I am granting it is because No. 1, it doesn't survive, but I think it's clear from the evidence that there was very little pain or suffering or very short time span in any event, O.K., so that I don't know what you would be able to prove on that, but I know you want to make the argument that a person who is driving a car or a passenger in a car who is awake and suffers these injuries, has some period of time of pain, even though it may be momentary, and I don't think that is good enough to keep it in."

■ Accepting the facts in plaintiff's complaint as true, we disagree with the trial court's conclusion that no set of facts could be proved which would entitle plaintiff to recover for decedent's pain and suffering. As the court in *In re Air Crash Disaster Near Chicago* (N.D. Ill. 1980), 507 F. Supp. 21, 24, stated interpreting Illinois law, "Courts have allowed claims of conscious pain and suffering to be determined by a jury when extremely short time intervals were involved." The duration of pain and suffering should determine the amount of, but not entitlement to, recovery. *In re Air Crash Disaster Near Chicago* (N.D. Ill. 1980), 507 F. Supp. 21; *Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, 1072, 436 N.E.2d 623, 628.

As a result of the dismissal of count V, no evidence was introduced on the question of whether decedent was conscious for any period of time following the accident. Therefore, we remand this cause for reinstatement of count V of plaintiff's complaint seeking damages for decedent's pain and suffering, if any, which she experienced for some period of consciousness following the accident.

In so ruling, we do not express any opinion as to whether plaintiff can prove that decedent consciously suffered pain following the accident. (See *In re Air Crash Disaster Near Chicago* (N.D. Ill. 1980), 507 F. Supp. 21, 24 n.1.) The inquiry on remand will be circumscribed and limited. In oral argument to this court, plaintiff conceded that he was not seeking damages for any time during which decedent was unconscious and admitted that decedent when she was found approximately 20 minutes after the accident was unconscious and remained unconscious until she died in the hospital several hours later. Therefore, the maximum time period for which plaintiff could conceivably establish pain and suffering was from the time the accident occurred until she was located in the field approximately 20 minutes later. The evidence presented concerning this time period must make more than speculative the conclusion that decedent was conscious and suffered

pain. See *In re Dearborn Marine Service, Inc.* (5th Cir. 1974), 499 F.2d 263, 288, *cert. dismissed sub nom. Monk v. Chambers & Kennedy* (1975), 423 U.S. 886, 46 L. Ed. 2d 118, 96 S. Ct. 163; *Davis v. Parkhill-Goodloe Co.* (5th Cir. 1962), 302 F.2d 489, 495.

Accordingly, we affirm in part and reverse in part and remand the order of the circuit court of Lake County.

*Affirmed in part, reversed in part and remanded.*

REINHARD and UNVERZAGT, JJ., concur.