MARGARET CHRYSLER, Special Adm'x of the Estate of Herbert E. Chrysler, Deceased, Plaintiff-Appellant, v. WILLIAM R. DARNALL, Defendant-Appellee.

First District (1st Division)   No. 1—90—0595

Opinion filed November 23, 1992.

Goldberg & Goldberg and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellant.

Bullaro, Carton & Stone, of Chicago (James R. Branit and Madeleine Weldon-Linne, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Margaret Chrysler, as special administratrix of the estate of Herbert E. Chrysler, deceased, brought an action in the circuit court of Cook County against Dr. William Darnall under the Wrongful Death Act (Ill. Rev. Stat. 1981, ch. 70, pars. 1, 2) and the Survival Act (Ill. Rev. Stat. 1981, ch. 110½, par. 27—6). A jury found the defendant liable and returned a verdict in favor of plaintiff, awarding $25,000 in pecuniary damages for loss of society, and $6,000 in medical expenses, a total of $31,000. On appeal, plaintiff contends that the jury's verdict was against the manifest weight of the evidence presented at trial, and that the trial court improperly denied her motion for a new trial on the issue of damages only. For the following reasons, we affirm the judgment of the trial court.

The following facts were adduced at trial. The decedent, Herbert E. Chrysler, died on September 7, 1979, at the age of 58 years. Plaintiff produced a mortality table at trial which indicated that at that time, the life expectancy of a man decedent's age was 19 years.

Dr. Darnall testified that he had been decedent's treating physician since 1950. At that time, decedent weighed 178 pounds. In 1970, Dr. Darnall treated decedent for epilepsy by prescribing Dilantin, an anti-convulsive medication, and Phenobarbitol, a nerve sedative, and in 1978 and 1979 decedent continued to take the medication daily.

On September 29, 1978, the decedent was admitted to Victory Memorial Hospital in Waukegan for acute thrombophlebitis of the right leg. At the time of his hospitalization, decedent was not working. Dr. Darnall treated decedent with bed rest and local heat, and started him on anti-coagulant drug therapy. Dr. Darnall testified that he did not give decedent Heparin, a drug which controls blood clotting, because in his opinion it was not indicated.

Decedent was discharged from the hospital on October 8, 1978. In a subsequent visit on October 30, 1978, Dr. Darnall determined that

the thrombophlebitis was cured, but did not give decedent leave to return to work. He noted that decedent had only minimal post-phlebetic residue (swelling) at that time, and did not prescribe oral anti-coagulants to decedent on an out-patient basis because he did not feel that decedent could comply with the strict rules of the prescription. Dr. Darnall admitted that decedent had no problems taking the drugs prescribed for epilepsy during that time.

On July 29, 1979, decedent was admitted to Victory Memorial through the emergency room and again treated for thrombophlebitis. At that time, decedent weighed 120 pounds. Plaintiff told Dr. Darnall that decedent had been having confusion and memory loss for three to four weeks prior to admission and that he could not take care of himself. Dr. Darnall treated decedent in the same manner as before, with bed rest, local heat and oral anti-coagulants. Initially, decedent appeared to respond to the treatment, but subsequently Dr. Darnall had some difficulty getting satisfactory results and changed decedent's medication from Dicumarol to Coumadin. Dr. Darnall did not give decedent Heparin, and testified that decedent's epilepsy was a factor in his decision not to use that drug.

During decedent's hospital stay, Dr. Darnall observed that decedent was mentally confused and disoriented. He asked plaintiff's permission to consult with a psychiatrist and thereafter engaged Dr. Edward DeLong to evaluate decedent. Dr. DeLong saw decedent on August 5, 1979, and diagnosed his condition as premature chronic brain syndrome. A CAT-scan test performed on decedent subsequently revealed that decedent suffered from generalized brain atrophy, an irreversible shrinkage of the brain, characterized by memory loss and lack of judgment, orientation and intellect. Dr. DeLong testified that his prognosis for decedent was poor and suggested to plaintiff and decedent that they consider institutionalizing decedent in the Veteran's Administration Hospital mental health facility in nearby Downey, Illinois. Decedent was hostile to this suggestion.

Based on an electroencephalogram (EEG) test performed on decedent, Dr. Darnall continued treating decedent for epilepsy with Dilantin and Phenobarbitol during his hospital stay.

On September 5, 1979, Dr. Darnall notified plaintiff that her husband's condition was critical. On that same day, he also told Carol Pellegrino, decedent's daughter, that her father was in critical condition. On September 6, 1979, Dr. Darnall discontinued treatment with anti-coagulants because an X ray showed that decedent had a ruptured esophagus, which caused peritonitis, an infection of the lining of the intestine in the abdominal cavity. On September 7, 1979, decedent

died. Based on the autopsy report, Dr. Darnall listed the causes of decedent's death as bilateral pulmonary embolism and generalized peritonitis due to disruption of the lower portion of the esophagus. Dr. Darnall testified that decedent would have died of the generalized peritonitis had he not had the thrombophlebitis, and that in his opinion, decedent's life expectancy was not 19 years at the time of his death.

Both parties presented expert witness testimony on the issue of Dr. Darnall's liability, which is not the subject of this appeal. However, plaintiff cites the expert testimony for other reasons, so those pertinent portions will be discussed here. Dr. Larry Milner, plaintiff's expert, relied upon decedent's hospital and autopsy records in formulating his opinion that Dr. Darnall breached the standard of care in treating decedent. In describing the disease that afflicted decedent, Dr. Milner stated that pain may be a symptom of thrombophlebitis.

Dr. William Buckingham testified as an expert on behalf of the defendant. Dr. Buckingham examined decedent's hospital and autopsy records and noted that the records disclosed that decedent experienced pain in his chest as a result of his ruptured esophagus. Dr. Buckingham also testified that decedent would have died on September 7, 1979, or shortly thereafter, as a result of the ruptured esophagus and generalized peritonitis even if he had not developed the pulmonary emboli. The medical records relied upon by both experts were not presented to the jury or admitted into evidence at trial.

Plaintiff testified that she was married to decedent on October 10, 1942, and had one child, Carol. She described her relationship with her husband as close and loving. She stated that decedent helped her with housework and drove her where she needed to go when she did not drive a car. They engaged in various activities together including watching television, and playing cribbage and cards.

Plaintiff testified that decedent had a ninth-grade education and was employed as a road maintenance worker for the Illinois Department of Transportation. Decedent's salary was $15,287.60 per year. At the time of his death, decedent had been on a leave of absence from work since April 1978. Decedent had planned to retire at age 65.

On cross-examination, plaintiff admitted that it was possible that she and her husband had not had sexual relations since April 1978. Prior to his 1979 hospitalization, decedent could not take care of himself. Because of his mental condition during his second hospitalization, at times decedent did not know plaintiff was there when she visited him. At times plaintiff saw decedent fighting the tubes in his nose

and noticed that his breathing "wasn't like it was before." Plaintiff admitted that she did not know that her husband had epilepsy and did not know that he was taking anti-seizure medication daily.

Carol Pellegrino, plaintiff and decedent's daughter, testified that her relationship with her father was very caring and loving, and that she was very close to her father because she was an only child. Carol was married in 1963 and left her parents' home. At that time, she lived 35 to 40 minutes away from her parents. Between 1963 and 1974 Carol saw her father at least once a week and spent holidays with her parents. She engaged in activities with her father including meals, shopping, watching television and playing cribbage. Carol sought her father's advice regarding child rearing and marital problems. Carol testified that during these years her father helped her with her children, taking the boys for haircuts, shopping or on trips to their paternal grandparents in Ohio. Decedent often took the boys to the park or played with them in the house.

In 1974, Carol moved to Arizona with her husband and family. She called home once or twice a month and spoke to both parents. Between 1974 and the time of decedent's death, Carol returned home to visit on two occasions. The visits lasted from a week to 10 days. Carol described her father as someone upon whom she could always depend throughout her lifetime.

Following trial, the jury found in favor of the plaintiff and against Dr. Darnall and awarded $6,000 for medical expenses under the survival count, and $25,000 in pecuniary damages to plaintiff under the wrongful death count. The jury did not award any amount for pain and suffering or disability experienced prior to decedent's death as a result of his injuries. The jury also declined to award any damages to Carol Pellegrino for pecuniary loss and loss of society. Judgment was entered on the verdict, and plaintiff filed a post-trial motion requesting a new trial on damages only. The trial court denied the motion on February 1, 1990. This timely appeal followed.

Plaintiff now contends that the trial court erred in denying her post-trial motion for a new trial on the issue of damages only, arguing that the evidence demonstrates that the jury's award of damages was palpably inadequate and against the manifest weight of the evidence.

The issue of damages is particularly within the discretion of the jury and courts are reluctant to interfere with the jury's exercise of its discretion. (*Gruidl v. Schell* (1988), 166 Ill. App. 3d 276, 283, 519 N.E.2d 963, 968.) A reviewing court may order a new trial if the damages are manifestly inadequate, if it is clear that proved elements of damages have been ignored or if the amount awarded bears no rea-

sonable relationship to the loss suffered by the plaintiff. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4, 6.) To determine whether a jury verdict on the amount of damages is inadequate for any of the foregoing reasons, we must consider the record as a whole. *Collins v. Straka* (1987), 164 Ill. App. 3d 355, 517 N.E.2d 1147.

Plaintiff first complains that the jury's assessment of $25,000 as pecuniary damages was palpably inadequate. Plaintiff suggests that $25,000 bears no reasonable relationship to the loss she suffered with decedent's death. Plaintiff argues that because the jury found defendant liable and assessed *some* damages, it therefore should have assessed *more* damages. Plaintiff's argument is unsupported by any persuasive authority.

The relevant portions of the Wrongful Death Act provide that the jury may give damages for pecuniary injuries from the wrongful death to the widow and next of kin of the decedent. Such damages are based on the presumption of reasonable expectation of benefits from the continuation of life. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.) The presumption, however, is rebuttable. Under the rules relating to presumptions, the presumption of pecuniary loss would, in the absence of any evidence of such loss, establish a *prima facie* case for plaintiff and merely shift the burden to defendant to establish contrary facts which the jury would be obliged to weigh. Implicit in the right to weigh the presumption is the right to give it no weight at all. *Flynn*, 41 Ill. 2d at 240.

Plaintiff seeks to establish that the presumption alone entitles her to a more substantial verdict. This argument was specifically rejected in *Smith v. Jewell* (1976), 41 Ill. App. 3d 754, 758, 354 N.E.2d 471, in which the court stated "substantial loss does not require the jury to award substantial damages." An award of damages is not palpably inadequate just because it was less than generous. *Gruidl*, 166 Ill. App. 3d at 283.

■ The record shows that the evidence presented in the present case was sufficient to rebut the presumption of pecuniary loss. The record indicates that decedent had not been working since April 1978, three months prior to his initial hospitalization for thrombophlebitis. Plaintiff's attorney stated at trial that the pecuniary damages claim was limited to the time frame of decedent's second hospitalization until decedent's expected retirement at the age of 65. The record further indicates that decedent suffered from an irreversible brain atrophy which would have required institutionalization and constant care. Finally, the evidence disclosed that decedent would have died from

causes unrelated to Dr. Darnall's treatment for thrombophlebitis around the same period of time. In light of the evidence presented at trial, the jury's verdict of $25,000 for pecuniary damages, despite a finding of liability, was clearly within the province of the jury and in accordance with the law.

■■ Regarding plaintiff's argument that decedent's daughter, Carol Pellegrino, was wrongly denied pecuniary damages, we similarly find no error. Even though both the plaintiff and her daughter may both suffer legally cognizable pecuniary injury which may include loss of society, it does not necessarily follow that both parties will be treated alike for purposes of the application of a presumption of loss of society. (See *In re Estate of Finley* (1992), 151 Ill. 2d 95.) Further, a jury verdict of no damages is not inconsistent with a finding of liability. *Flynn*, 41 Ill. 2d at 240.

Plaintiff further contends that the jury ignored instructions and disregarded proven elements of damages in failing to award any damages for decedent's pain and suffering and disability under the survival count. Plaintiff first argues that the evidence proved that plaintiff suffered pain. Plaintiff further argues that because the jury found defendant liable, and awarded medical expenses, it follows that damages should have been awarded for pain and suffering. Plaintiff's contentions are unsupported by the record or by authority.

Damages must be proved to be recovered. (*Poeta v. Sheridan Point Shopping Plaza Partnership* (1990), 195 Ill. App. 3d 852, 552 N.E.2d 1248.) The plaintiff has the burden of proving causation and the nature and extent of her alleged injuries, even though liability is established. (*Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 649, 432 N.E.2d 1267, 1273.) The evidence presented concerning the time period involved must do more than provide speculation that decedent was conscious and suffered pain. *Bart v. Union Oil Co.* (1989), 185 Ill. App. 3d 64, 68, 540 N.E.2d 770, 773; *Maras v. Bertholdt* (1984), 126 Ill. App. 3d 876, 890-91, 467 N.E.2d 599, 609-10.

■■ In the present case, the record shows that the evidence failed to conclusively establish that decedent experienced pain and suffering as a result of the conduct of Dr. Darnall. Plaintiff's expert, Dr. Milner, gave his opinion regarding the standard of care given to decedent by Dr. Darnall during decedent's two hospitalizations. With regard to his opinion, Dr. Milner described the disease and testified that pain is often a symptom of thrombophlebitis. The record shows that Dr. Milner relied upon decedent's hospital records in formulating his opinion and that the records were not admitted as evidence at trial.

Medical records are inadmissible hearsay, and an expert's testimony regarding them does not transform the records into substantively admissible evidence. (*Henry v. Brenner* (1985), 138 Ill. App. 3d 609, 486 N.E.2d 934.) Indeed, expert testimony regarding the contents of medical records is admissible solely to illustrate and explain the basis of the expert's opinion. (*Mayer v. Baisier* (1986), 147 Ill. App. 3d 150, 157, 497 N.E.2d 827, citing *Henry*, 138 Ill. App. 3d at 614.) Thus, Dr. Milner's testimony is insufficient to establish pain and suffering on the part of decedent.

Plaintiff's only other evidence regarding decedent's pain and suffering was her own testimony that decedent's breathing while in the hospital the second time "wasn't like it was before," that he slept constantly and was "fighting something." This evidence is speculative, and, therefore inconclusive. The only other evidence of pain came in the testimony of defendant's expert, Dr. Buckingham, who testified that decedent experienced pain as a result of the ruptured esophagus. There was no testimony that the ruptured esophagus was in any way related to the pulmonary emboli and related treatment by Dr. Darnall.

Plaintiff cites a number of cases in which a jury's verdict was held inadequate as a matter of law for failure to consider the pain and suffering caused by the underlying injury. These cases are distinguishable from the present case because the victims' pain and suffering could be more easily inferred by the court. In *Giardino v. Fierke* (1987), 160 Ill. App. 3d 648, 513 N.E.2d 1168, this court held that a jury's verdict of slightly less than the amount of the uncontroverted special damages was inadequate as a matter of law. There, the court inferred pain and suffering from an injury resulting in a nine-day hospital stay, numerous treatments for back pain, partial hearing loss and vertigo.

Plaintiff also cites *Schranz v. Halley* (1984), 128 Ill. App. 3d 125, 469 N.E.2d 1389, and *Stamat v. Merry* (1979), 78 Ill. App. 3d 445, 397 N.E.2d 141, but these cases are also distinguishable from the present case. In *Schranz*, the jury awarded the plaintiff the exact amount of her medical expenses, but the appellate court reversed for failure of the verdict to account for the plaintiff's obvious pain and suffering. The plaintiff in that case suffered a skull fracture, a concussion and cerebral contusions and was hospitalized for a week. (*Schranz*, 128 Ill. App. 3d at 127.) Similarly, in *Stamat*, the plaintiff had extensive facial fractures, which had to be repaired by permanently wiring his face, and suffered permanently from double vision and a partial loss of feeling in his face. (*Stamat*, 78 Ill. App. 3d at 448.) Clearly, the extent of the injuries in both these cases provided a

sufficient basis for the reviewing court to infer the existence of compensable pain and suffering. Here, we cannot make that same inference based on the evidence presented at trial.

■ Plaintiff's further argument that the jury was obligated to award damages for pain and suffering because it awarded medical expenses is without merit. It is well established that a verdict of liability with an award of damages for medical expenses but not for pain and suffering is entirely proper. (See, *e.g., Perry v. Storzbach* (1990), 206 Ill. App. 3d 1065, 565 N.E.2d 211; *Elliott v. Koch* (1990), 200 Ill. App. 3d 1, 558 N.E.2d 493.) Thus, there is no basis for the conclusion that the jury verdict was against the manifest weight of the evidence regarding decedent's alleged pain and suffering.

■ Plaintiff further complains of the jury's lack of assessment of damages for decedent's alleged disability experienced prior to his death. Plaintiff argues that decedent was disabled for the 40-day period of his hospitalization, that he was confined to bed and was therefore unable to attend to his usual activities. Plaintiff cites no authority for her contention that this hospitalization constitutes damages for disability. The record indicates, however, that decedent was disabled prior to his hospitalization, being unable to care for himself and unable to engage in his usual activities.

■ An award will be held to be inadequate where in light of the plaintiff's proved medical expenses, pain and suffering, and disabilities, the jury could not have considered all of these damage elements in arriving at its award. (*Giardino,* 160 Ill. App. 3d at 652.) As plaintiff failed to prove pain and suffering and disability, the jury's verdict was not manifestly inadequate. It does not follow that because the jury failed to assess damages for each item on the itemized verdict form, the jury failed to follow instructions. We therefore find that the trial court properly denied plaintiff's motion for a new trial on the issue of damages only.

For the above reasons, the judgment of the trial court is affirmed.

Affirmed.

BUCKLEY, P.J., and MANNING, J., concur.