Betti McCLAIN, as Special Administrator
for the Estate of Charles McClain,
Deceased, Plaintiff–Appellee,

v.

OWENS–CORNING FIBERGLAS
CORPORATION, Defendant–
Appellant.

No. 96–3936.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1997.

Decided March 23, 1998.

Richard L. Stavins (argued), James DeZelar, Robbins, Salomon & Patt, Chicago, IL, for Plaintiff–Appellee.

Stephen A. Wood, Kelley, Drye & Warren, Chicago, IL, Michael J. O'Rourke, Kelly A. McCloskey, Mitchell B. Katten (argued), O'Rourke & Griffin, Chicago, IL, for Defendant–Appellant.

Before BAUER, KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Owens-Corning Fiberglas Corporation ("Owens-Corning") presents two issues to this Court. First, it appeals the district court's decision granting Betti McClain's ("McClain") motion for a new trial on the issue of wrongful death damages. Second, Owens-Corning challenges the district court's exclusion of certain evidence from the retrial on wrongful death damages. Because we find that the district court neither abused its discretion by ordering a new trial solely on wrongful death damages nor by excluding evidence in the new trial, we affirm the judgment of the district court.

## I. History

Betti McClain, individually and as Executor of the Estate of Charles McClain, sued twenty-two defendants for damages resulting from personal injury and wrongful death. McClain alleged that her late husband died from mesothelioma caused by exposure to asbestos-containing products which the defendants sold. At the time of trial, Owens-Corning was the only remaining defendant.

In April 1996, the jury returned a verdict against Owens-Corning in the amount of $130,000 for personal injury and $100,000 for wrongful death. In May 1996, McClain filed a motion for new trial on damages only or in the alternative for a new trial on all issues. In July 1996, the district court granted McClain's motion in part, vacating the wrongful death damage award and ordering a new trial on wrongful death damages only. This second trial occurred in August 1996. Prior to its start, McClain reasserted a motion in limine from the first trial. She moved to exclude any evidence that, after Charles McClain's death, McClain cohabited with her deceased husband's male cousin. The court granted the motion and excluded all such evidence. The jury awarded McClain $700,-000, and Owens-Corning moved for a new trial. The court denied the motion, and Owens-Corning now appeals to this Court.

## II. Analysis

### A. Grant of New Trial

A federal court sitting in diversity applies federal standards to a motion for new trial. See *Browning-Ferris Indus., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278-79, 109 S.Ct. 2909, 2921-22, 106 L.Ed.2d 219 (1989). A district court may grant a new trial if it finds the verdict against the weight of the evidence. See *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2 L.Ed.2d 953 (1958), overruled on other grounds, *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293 (7th Cir.1993). Because Owens-Corning's liability is based on Illinois law, Illinois law governs the question of whether the evidence supports the award of damages. See *Medcom Holding Co. v. Baxter Travenol Lab., Inc.*, 106 F.3d 1388, 1397 (7th Cir.1997). A district court, therefore, is required "to look to Illinois law for the substantive standard of what evidence would satisfy proof of damages." Id.; see also *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, ——, 116 S.Ct. 2211, 2225, 135 L.Ed.2d 659 (1996). We review the district court's grant of a motion for a new trial for abuse of discretion. See *Gasperini*, at ——, 116 S.Ct. at 2223; *United States v. Kim*, 111 F.3d 1351, 1362 (7th Cir.1997); *Medcom*, 106 F.3d at 1397. "Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court." *Harrington v. DeVito*, 656 F.2d 264, 269 (7th Cir.1981).

McClain requested $163,000 in special damages for financial loss. According to her expert's testimony, this figure represents the present value of McClain's future economic losses, including loss of Charles McClain's wages, pension benefits, and Social Security benefits. McClain also requested damages for loss of society for herself and her children. A loss of society claim includes loss of love, affection, care, attention, companionship, comfort, guidance, and protection. See *Singh v. Air Ill.*, Inc., 165 Ill.App.3d 923, 117 Ill.Dec. 501, 507, 520 N.E.2d 852, 858 (Ill. App.Ct.1988).

Owens-Corning's strategy at the first trial was to contest liability, not damages. Owens–Corning only superficially cross-examined McClain's expert witness in regard to the accuracy of the financial loss figure, and it did not call any witnesses on its own behalf to contest the figures McClain presented.

The jury returned a verdict in favor of McClain in the amount of $100,000 for the wrongful death damages. It did not itemize the damage award; therefore we cannot apportion the total between financial loss (wages, pension and Social Security benefits) and loss of society damages. All we know is that this figure was $63,000 below the estimated economic losses attributable to Charles McClain's death.

On appeal, Owens–Corning presents to us the precise argument it made to the district court in contesting the motion for new trial. Owens–Corning does not dispute that it did not seriously challenge McClain's expert's damage figures; instead it argues that juries can disregard expert testimony, even it if is uncontested. See *In re Glenville*, 139 Ill.2d 242, 152 Ill.Dec. 90, 94, 565 N.E.2d 623, 627 (1990). Consistent with this proposition, Owens–Corning suggests numerous factors the jury may have considered which would have induced it to lower the wrongful death damages amount substantially. It concludes by citing two Illinois cases, *Chrysler v. Darnall*, 238 Ill.App.3d 673, 179 Ill.Dec. 721, 606 N.E.2d 553 (1992), and *Carter v. Chicago & Ill. Midland Ry. Co.*, 130 Ill.App.3d 431, 85 Ill.Dec. 730, 474 N.E.2d 458 (1985). Owens–Corning contends that *Chrysler* stands for the proposition that a jury can award significantly less than the requested amount of financial loss, and nothing for loss of society, without committing error necessitating a new trial on damages. See *Chrysler*, 179 Ill.Dec. at 726–28, 606 N.E.2d at 558–60. In *Carter*, the jury awarded the plaintiff less than half of the amount of financial damages established by the plaintiff's expert witness, and the Illinois Appellate Court upheld the award. See 85 Ill.Dec. at 735, 474 N.E.2d at 463. Relying on these two cases, Owens–Corning suggests that an award of $100,000 is sufficient to compensate McClain, even though it barely contested her expert's testi-mony that her financial losses approximated $163,000 and she asked for damages for loss of society.

McClain counters that a new trial is necessary where damages are awarded for only itemized special damages and nothing is awarded for general damages. See, e.g., *Usselmann v. Jansen*, 257 Ill.App.3d 978, 195 Ill.Dec. 885, 887, 629 N.E.2d 193, 195 (1994). McClain also suggests that a new trial is appropriate where the jury's award of damages is less than the undisputed financial loss. See, e.g., *Duncan v. Peoria Yellow Checker Cab Co.*, 45 Ill.App.3d 653, 4 Ill.Dec. 290, 292–93, 359 N.E.2d 1242, 1244–45 (1977). On appeal, McClain goes to great lengths to distinguish the precedent cited by Owens–Corning and to demonstrate the highly fact-specific nature of the inquiry at hand.

The court below vacated the wrongful death damage award because, after surveying Illinois case law as presented by both parties, it found the $100,000 wrongful death award to be palpably inadequate and against the manifest weight of the evidence. The district court found especially noteworthy that the financial loss figure was only superficially disputed, that the award did not adequately reflect a reasonable damage sum for McClain's loss of society claim, and that Owens–Corning's precedent was distinguishable.

We do not find an abuse of discretion here. The district court weighed Illinois law on the question and determined that, considering Owens–Corning's trial strategy and McClain's loss figures, the jury committed error in regard to the wrongful death damages. The Illinois case law on point is highly fact-specific. See *Usselmann*, 195 Ill.Dec. at 888, 629 N.E.2d at 196 ("Plaintiffs present us with numerous cases where the courts have reversed damage awards for their inadequacy, and defendant cites numerous cases where the courts have upheld damage awards. Clearly, each case must be analyzed on its specific facts…."). Read broadly, the cases on which the parties rely could support either the grant or denial of a new trial on damages in this case. Because " '[t]he very nature of the problem counsels restraint … [and w]e must give the benefit of every doubt to the judgment of the trial judge,' " *Gasperi-*

*ni*, at ——, 116 S.Ct. at 2225 (quoting *Dagnello v. Long Island R.R.*, 289 F.2d 797, 806 (2d Cir.1961)), we hold that the district court did not abuse its discretion in ordering a new trial.

### B. New Trial on Wrongful Death Damages Only

 Owens-Corning argues that if a new trial was properly granted, it should have been granted as to all issues and not on wrongful death damages alone. The propriety of granting a new trial on damages alone is governed by federal law. See *Continental Cas. Co. v. Howard*, 775 F.2d 876, 883 (7th Cir.1985). Partial trials are proper if "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). If, however, the "question of damages ... is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty," *id.*, then a trial on only one issue is tantamount to a denial of a fair trial. See *id.* We review a district court's decision to grant a partial new trial on damages for abuse of discretion. See *Medcom*, 106 F.3d at 1397.

The district court found that Owens-Corning's liability presented a question distinct from that of damages. The finding of liability required McClain to prove knowledge, breach of a duty of care, and causation, while the damages issue concerned loss to the McClain family caused by Charles McClain's death. Liability and damages are separated not only by the elements required but also by timing; the liability inquiry involved questions of Owens-Corning's knowledge and actions in the 1950s–1970s, while the damages inquiry focused on the period after Charles McClain's death in 1990. We therefore agree with the district court that these issues are sufficiently separate. Additionally, it is highly unlikely that the error in awarding damages tainted the liability finding. Thus the district court did not abuse its discretion by ordering the new trial to proceed on the question of damages alone.

### C. Exclusion of Evidence of McClain's Cohabitation

 Prior to both trials, McClain moved in limine to preclude Owens-Corning from introducing evidence concerning her relationship and cohabitation with her deceased husband's cousin, Paul Gaddey. The trial court found that such evidence was more prejudicial than probative and thus granted the motions, precluding Owens-Corning from raising this issue at either trial.

In an offer of proof made outside the presence of the jury, McClain testified that she has shared a residence with Gaddey for over three years. McClain stated that they are good friends and have known each other since McClain was fifteen years old. McClain testified that she and Gaddey have separate bedrooms and do not commingle finances. McClain and Gaddey socialize together and McClain considers Gaddey her companion. Owens-Corning argues that evidence of McClain's relationship with Gaddey should have been admitted because it bears on the elements of consortium.

 Although this is a diversity case, evidentiary issues are governed by federal law. See *Klonowski v. International Armament Corp.*, 17 F.3d 992, 995 (7th Cir.1994); *Barron v. Ford Motor Co. of Can.*, 965 F.2d 195, 198–99 (7th Cir.1992). Owens-Corning bears "an onerous burden 'because a reviewing court gives special deference to the evidentiary rulings of the trial court.'" *Berry v. Deloney*, 28 F.3d 604, 607 (7th Cir.1994) (quoting *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1183 (7th Cir.1992)). We will reverse a trial court's evidentiary ruling only if the court abused its discretion. See *Wheeler v. Sims*, 951 F.2d 796, 802 (7th Cir.1992). "[T]he abuse of discretion standard is met only when the trial judge's 'decision is based on an erroneous conclusion of law or where the record contains no evidence on which [s]he rationally could have based that decision, or where the supposed facts found are clearly erroneous.'" Id. (quoting *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 563–64 (7th Cir.1984)).

Although evidentiary decisions are based on federal law, the district court must look to Illinois law to determine whether this kind of information is probative on the question of wrongful death damages. The Illinois law to which the district court turned was the law on loss of consortium claims. On appeal, the parties briefed the issue assuming that McClain's claim was properly categorized as a loss of consortium claim. Accordingly, we will consider McClain's claim to be for loss of consortium, and we will examine the probative value of the evidence of cohabitation in relation to the Illinois law on loss of consortium.

In 1982, the Illinois Supreme Court determined that the Illinois Wrongful Death Act permitted recovery for loss of consortium. See *Elliott v. Willis*, 92 Ill.2d 530, 65 Ill.Dec. 852, 857, 442 N.E.2d 163, 168 (1982). Consortium includes society, guidance, companionship, felicity, and sexual relations. See *id.* at 854, 442 N.E.2d at 165. It is unique to a marriage partner. See id. The Illinois courts have established that damages for loss of consortium terminate upon the surviving spouse's remarriage, regardless of the potential differences between the deceased and new spouses. See *Carter v. Chicago & Ill. Midland Ry. Co.*, 130 Ill. App.3d 431, 85 Ill.Dec. 730, 735, 474 N.E.2d 458, 463 (1985) ("[I]f loss of consortium is sought, it must be actual loss; that is, loss up to the time of remarriage. It may be true . . . that consortium with the deceased spouse may have been of a different quality from that with the present spouse, but such speculations could lead only to Aristophanes' Nepheloccocygia.").

The Illinois courts have not conclusively resolved whether cohabitation is relevant to loss of consortium damages. In the only case where cohabitation was at issue, the court declined to address the defendant's argument that the "remarriage rule"—that recovery for loss of consortium terminates upon remarriage—should be extended to apply to cohabitation. See *Martin v. Illinois Central R.R.*, 237 Ill.App.3d 910, 179 Ill.Dec. 177, 185, 606 N.E.2d 9, 17 (1991). In *Martin*, the defendant argued that the trial court had improperly limited its evidence on damages by not permitting it to show that the plaintiff cohabited with a man after her husband's death. See *id.* The defendant argued that the plaintiff should not have been allowed to recover loss of consortium damages for the time she cohabited. See *id.* While the court declined to address directly the defendant's claim, it did hold that the trial court did not err in excluding the evidence of the plaintiff's cohabitation. See *id.*

Given this precedent, we find that whether or not McClain is cohabiting with someone is irrelevant to the question of the loss she suffered as a result of her husband's death. The Illinois courts recognize that "[t]he loss of consortium reflects the loss of personal benefits and satisfactions the surviving spouse enjoyed as a result of a highly individualized relationship with a particular person." *Pfeifer v. Canyon Constr. Co.*, 253 Ill.App.3d 1017, 195 Ill.Dec. 282, 290, 628 N.E.2d 746, 754 (1993). That McClain may be finding some comfort in her new companion does not negate the loss she incurred as a result of her husband's death. Owens–Corning's argument that her loss should in some way be offset by the companionship she receives from Gaddey is unpersuasive. The Illinois Appellate Court rejected such comparisons between deceased and new spouses, see *Carter*, 85 Ill.Dec. at 735, 474 N.E.2d at 463, and we believe the Illinois Supreme Court would frown on such comparisons between deceased spouses and new cohabitants.[1]

---

1. Owens-Corning also argues that the court should not have precluded evidence of McClain's cohabitation once she testified that she was "alone." Owens–Corning claims that it should have been given the opportunity to impeach McClain's testimony on this point. While it is possible that the jury might have been somewhat misled, in this case any error in allowing McClain's unimpeached testimony was harmless.

As explained above, loss of consortium damages are meant to reflect the loss attributable to a spouse's death. That Gaddey exists and is McClain's companion is immaterial to the question of her loss. Thus, even if the court had allowed Owens–Corning to impeach McClain's testimony, the fact that McClain is not "alone" would not affect her loss of consortium damages.

Owens-Corning cites *Countryman v. County of Winnebago*, 135 Ill.App.3d 384, 90 Ill.Dec. 344, 481 N.E.2d 1255 (1985), in support of its position. *Countryman* is easily distinguishable from this case. In *Countryman*, prior to her husband's death, the wife learned that he was having an affair. After his death, she sued under the Illinois wrongful death statute, making a claim for, inter alia, loss of consortium. The trial court allowed the evidence of the extramarital affair, finding that it was probative on the issue of the value of the relationship prior to the husband's death. In the instant case, the question of whether or not McClain is currently cohabiting with a man has no impact on the value of her relationship to her husband prior to his death.

In light of the Illinois precedent on loss of consortium, we hold that the district court did not abuse its discretion by excluding evidence that McClain cohabits with Gaddey.

Because we find that the district court neither abused its discretion in ordering a new trial solely on wrongful death damages nor in excluding evidence of McClain's cohabitation with Gaddey, we AFFIRM the judgment of the district court.