JOSEPH WEBER, JR., as Adm'r of the Estate of Margaret Weber, Plaintiff-Appellant, v. THOMAS COLE *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—92—1864

Opinion filed March 17; 1994.

David L. Poindexter, of Holstein, Mack & Klein, of Chicago, for appellant.

William L. Barr, Jr., and Laurie D. Jaffe, both of Bell, Boyd & Lloyd, of Chicago, for appellees Thomas Cole and Frank Carter.

Kathryn K. Loft, of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Mindy Kallus, of counsel), for other appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Joseph Weber, Jr., filed this medical malpractice action on behalf of the estate of Margaret Weber, his mother, seeking dam-

ages for injuries she sustained due to defendants' negligence. Following trial in the circuit court of Cook County, the jury found in favor of plaintiff and awarded him $15,530 for Mrs. Weber's medical expenses. Plaintiff appeals, contending that the damage award was insufficient and inconsistent with the evidence.

We affirm.

The following evidence was adduced at trial. On August 15, 1984, Margaret Weber was admitted to Northwest Community Hospital in Arlington Heights, Illinois, after she fell and fractured her hip. Upon her admission, Mrs. Weber's family requested that defendant Lidge, Alfini, Zwilling, Lamberta Orthopedic Associates (Orthopedic Associates), an orthopedic surgeon group, treat Mrs. Weber for her injuries. Hospital officials contacted defendant Dr. William Zwilling, a partner at Orthopedic Associates, who agreed to serve as Mrs. Weber's orthopedic consultant. Defendant Zwilling also selected defendants Drs. Thomas Cole and Frank Carter, who were on staff at the hospital, to care for Mrs. Weber.

Later that evening, defendant Zwilling examined Mrs. Weber and tentatively scheduled her for surgery on the following morning. However, defendant Cole suggested that the surgery be delayed because Mrs. Weber's blood pressure was elevated. On August 20, 1984, defendant Zwilling performed hip replacement surgery on Mrs. Weber, who remained hospitalized for approximately three weeks before being discharged.

At trial, plaintiff and his wife, Doris Weber, each testified that during his mother's hospital stay following surgery, she appeared confused, lethargic, and her physical condition continued to deteriorate. Plaintiff further testified that when he learned on September 7, 1984, that Mrs. Weber would be discharged later that day, he complained to a hospital nurse that he believed she was too ill. According to plaintiff, his mother was discharged despite his objections, and her condition failed to improve even though private duty nurses were employed to care for her while at home. Plaintiff further testified that he contacted the Mayo Clinic on September 10, 1984, and had Mrs. Weber transported there. Doctors at the Mayo Clinic determined that Mrs. Weber was suffering from acute renal failure, for which she was given dialysis and other treatment. Mrs. Weber was discharged from the Mayo Clinic after a 16-day stay. She subsequently passed away on December 29, 1988, prior to trial.

During trial, the videotaped deposition of plaintiff's medical expert, Dr. Frank Krumlovsky, was presented to the jury. Dr. Krumlovsky stated that defendants negligently failed to diagnose Mrs. Weber's renal failure, which developed following her surgery. He also

opined that defendants prematurely discharged Mrs. Weber from the hospital, thereby causing her to endure three uncomfortable days at home, and the need for the medical treatment she received at the Mayo Clinic. Dr. Krumlovsky further testified that dialysis does not cause any pain, and that Mrs. Weber suffered no permanent damage as a result of defendants' negligence.

Defendant Dr. Frank Carter testified that Mrs. Weber's condition improved during her hospital stay following surgery and that by September 7, 1984, Mrs. Weber had recovered well from her fractured hip. He further testified that Mrs. Weber could have been properly discharged on September 30, 1984, but defendant Zwilling agreed to allow her to remain hospitalized to allow her hip to strengthen.

Defendant Dr. James Cole testified that he examined Mrs. Weber on both September 6, 1984, and the day of her discharge. According to defendant Cole, Mrs. Weber was not confused, but appeared alert. He also testified that Mrs. Weber was walking and participating in physical therapy. Defendant Cole stated that on September 7, 1984, Mrs. Weber's condition had improved considerably since he last saw her on August 24, 1984.

Dr. Herbert Loseff, an orthopedic surgeon, testified as an expert witness for the defense. He stated that he reviewed Mrs. Weber's medical records, which indicated that Mrs. Weber's condition had improved following her surgery despite some post-operative confusion which he considered common for a person of Mrs. Weber's age. Dr. Loseff opined that Mrs. Weber was not dehydrated during her hospital stay following her surgery. Similarly, Dr. Coleman Seskind, another medical expert called by defendants, testified that based upon his review of Mrs. Weber's medical records, Mrs. Weber was not dehydrated at the time she was discharged from the hospital.

At the conclusion of the evidence, the parties presented closing arguments to the jury. Thereafter, the trial court instructed the jury as to the applicable law. Following its deliberations, the jury returned a verdict for plaintiff in the amount of $15,530 for Mrs. Weber's reasonable medical expenses. The trial court later denied plaintiff's post-trial motion in which plaintiff requested a new trial on the issue of damages. Hence, plaintiff filed this appeal.

Plaintiff claims that a new trial as to damages is warranted because the jury's failure to award damages for pain and suffering or disability was contrary to the uncontested evidence. We note that during oral argument, plaintiff acknowledged that no evidence established that Mrs. Weber experienced any pain. Hence, the question before this court is whether a new trial on damages is warranted because the jury failed to award damages for Mrs. Weber's purported suffering and disability.

■ ■ To recover damages even after liability has already been established, a plaintiff must prove, *inter alia*, the nature and extent of any alleged injures. (*Chrysler v. Darnall* (1992), 238 Ill. App. 3d 673, 680.) The question of damages is determined by the jury, whose decision a reviewing court should be reluctant to disturb. (*Chrysler*, 238 Ill. App. 3d at 678; *Cerveny v. American Family Insurance Co.* (1993), 255 Ill. App. 3d 399, 406.) However, a reviewing court may order a new trial where it finds that the damage award was against the manifest weight of the evidence or palpably inadequate, or the jury clearly disregarded a proved element of damages. *Williams v. Commonwealth Edison Co.* (1992), 232 Ill. App. 3d 85, 90.

■ Plaintiff contends that the jury ignored the evidence regarding Mrs. Weber's suffering and disability, *i.e.*, loss of energy, fatigue, discomfort, and absence from home due to transfer to Mayo Clinic. However, we cannot agree with plaintiff that the evidence conclusively established compensable damages for Mrs. Weber's physical suffering and disability. While we are cognizant of Dr. Krumlovsky's testimony that Mrs. Weber "would have experienced physical suffering and disability as a result of defendant's negligence," we note that Dr. Krumlovsky never examined Mrs. Weber but based his opinion on medical records. The trier of fact determines the weight and sufficiency of expert testimony. (*Sandburg-Schiller v. Rosello* (1983), 119 Ill. App. 3d 318, 336.) We believe the jury could have properly decided to give little or no weight to Dr. Krumlovsky's testimony given the fact that he never examined her.

Moreover, we disagree with plaintiff that his and his wife's testimony went unrefuted and was therefore sufficient to establish the elements of suffering and disability. Contrary to plaintiff's testimony that Mrs. Weber's condition only deteriorated during her hospital stay after her surgery, defendants and their experts testified that her condition continued to improve. Undoubtedly, it is the function of the jury to determine the credibility of witnesses and the weight to be given their testimony. (*Griffin v. Rogers* (1988), 177 Ill. App. 3d 690, 694-95.) Because the jury could have chosen to believe defendants' testimony, we remain unpersuaded that the evidence established compensable damages for Mrs. Weber's purported suffering and disability.

Additionally, this court has recognized that some degree of suffering and discomfort naturally results from injuries which require medical treatment. (*Butkewicz v. Chicago Transit Authority* (1993), 252 Ill. App. 3d 914, 920.) Consequently, the jury could have properly reasoned that any suffering and disability experienced by Mrs. Weber was as a consequence of the hip replacement surgery. Without

question, the jury awarded damages for Mrs. Weber's reasonable medical expenses which were proved at trial. After our careful review of the evidence, we cannot say that the jury disregarded any proved elements of damages, and we decline to interfere with the jury's verdict.

Furthermore, we must also reject plaintiff's argument that the zero damage award for pain and suffering and disability is inconsistent with the award for Mrs. Weber's medical expenses. After rendering a finding of liability, a jury may properly award damages for medical expenses and none for pain and suffering. (*Chrysler v. Darnall* (1992), 238 Ill. App. 3d 673, 682; see also *Griffin v. Rogers* (1988), 177 Ill. App. 3d 690 (where the court upheld the jury's damage award for medical expenses and lost wages but nothing for pain and suffering or disability).) Consequently, we find no inconsistency between the jury's verdict and the evidence, and therefore, plaintiff's request for a new trial is denied.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

CAHILL, P.J., and THEIS, J., concur.