In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 06-3061, 06-3164, & 06-4155

ROBERT M. BURGER,

*Plaintiff / Appellee / Cross-Appellant,*

*v.*

INTERNATIONAL UNION OF ELEVATOR
CONSTRUCTORS LOCAL NO. 2,

*Defendant / Appellant / Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 8068—**Virginia M. Kendall**, *Judge.*

ARGUED MAY 31, 2007—DECIDED AUGUST 22, 2007

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Robert M. Burger was a member
of the International Union of Elevator Constructors, Local
No. 2. He sued the union after he was expelled from it,
alleging injuries under both the Age Discrimination in
Employment Act, 29 U.S.C. § 621 *et seq.*, and the Labor
Management Relations Act, 29 U.S.C. § 141 *et seq.* A jury
returned a verdict in favor of Burger on both counts, and
the district court entered judgment on the jury's verdict.
The district court later entered a separate judgment
awarding Burger attorney's fees and costs. Both parties

appeal the judgment on the verdict, and the union appeals the award of fees and costs. We affirm in part, reverse in part, and remand for further proceedings.

## I. HISTORY

Burger was an elevator mechanic. He worked in that field from 1987 until the events that led to this lawsuit. During the majority of that time, he was a member of International Union of Elevator Constructors, Local No. 2 ("the union"), holding the position of "helper." In 2002, the union negotiated a new master agreement with the employers who hire the union's members. The new agreement implemented an apprenticeship program and set priorities for which categories of union members would be fired first. In 2003, Burger was fired from his job. He brought charges with the EEOC, alleging that the apprenticeship program and the firing priorities amounted to age discrimination. Throughout 2003, Burger applied for reduced-fee union cards due to his lack of employment and he continued to lodge complaints with the EEOC and the NLRB about the union's policies. The union gave him a reduced-fee union card on April 1. When he asked for a second reduced-fee card the following quarter, the union secretary told him that he had to sign the "out-of-work" book before receiving that card. Burger refused, but the union gave him a reduced-fee card anyway.

In July 2003, as Burger continued to file charges with the NLRB regarding the union's use of members' dues and the union's diligence in representing the interests of the members, his complaints were the topic of discussion at the union's meeting. Testimony at trial indicated that at least one high-ranking member of the union might have indicated that the union would "go after" or otherwise punish Burger for his complaints. The next time that Burger came due for a union card, he requested a reduced-

fee card and was denied it. The secretary repeated that he must sign the out-of-work book, but the union was (and is) unable to provide evidence that any such policy existed before it was applied to Burger. In fact, testimony at trial suggested that no other union member had ever been denied a reduced-fee card for failing to sign the out-of-work book. Nevertheless, the union denied Burger a reduced-fee card. Without the union card, he was unable to find much work.

Burger filed administrative charges with the Illinois state authorities and the EEOC, and he received a right to sue letter in 2003. He filed a five-count complaint against the union and other defendants. The counts against the other defendants have been dismissed over the course of the litigation. His allegations against the union were two-fold: that it had retaliated against him for his age discrimination complaints to the EEOC and NLRB by denying him a reduced-fee card (effectively preventing him from finding work) and that the union had breached its duty of fair representation in violation of the Labor Management Relations Act by denying him his card.

The case went to trial. After Burger had presented his case, the union moved for judgment as a matter of law. FED. R. CIV. P. 50(a). The district court denied the motion. The jury returned a verdict in favor of Burger on both counts against the union. The union renewed its motion for judgment as a matter of law. FED. R. CIV. P. 50(b). The district court denied that motion as well.

The district court entered judgment on the verdict. However, the parties and the district court had some difficulty in reconciling the jury's award of damages. The district court reduced the jury's award of damages in order to avoid the possibility of a duplicative recovery for lost back wages. The district court then doubled the back pay award as liquidated damages under the ADEA. *See* 29

U.S.C. § 626(b) ("[L]iquidated damages shall be payable only in cases of willful violations of this chapter."); *Rose v. Hearst Magazines Div.*, *The Hearst Corp.*, 814 F.2d 491, 493 (7th Cir. 1987) (holding that a jury verdict finding ADEA retaliation is inconsistent with a finding of non-willful discrimination). Finally, the district court awarded attorney's fees and costs to Burger.

The union argues on appeal that neither the verdict nor the damage award was supported by the evidence. The union also argues that the damage award gives Burger a double recovery for the same injury, and that the district court erred in the way that it doubled the back pay. Burger also appeals the damages award, arguing that the award should not have been reduced by the district court. Finally, the union appeals the award of attorney's fees and costs in the event that we reverse the entry of the judgment.

## II. ANALYSIS

We can dispense with much of the substance of this appeal relatively quickly. The union seeks to overturn a jury verdict by arguing that the evidence was insufficient to support the jury's verdict. "We review *de novo* the district court's decision to deny [a] motion for judgment as a matter of law." *Filipovich v. K & R Express Sys., Inc.,* 391 F.3d 859, 863 (7th Cir. 2004). "Our job is to assure that the jury had a legally sufficient evidentiary basis for its verdict." *Id.*

On the question of retaliation and failure to represent, the union only challenges whether Burger had shown a causal link between his protected activity and the union's denial of his reduced-fee card. It argues that if he had only signed the out-of-work book, he would have received his card and been able to work. But Burger provided

evidence that no other union member had ever been required to sign the book and that the alleged rule requiring him to do so was not contained in any rule, constitution, or by-law of the union. Of course the union is permitted wide latitude in making internal regulations such as this, but Burger's argument was that the issue of signing the out-of-work book was simply a pretext that the union was using to disguise its retaliation for his complaints to the EEOC and NLRB. He provided evidence that as he lodged more and more external complaints about the union, the leadership voiced an intent to penalize him for his activities. He provided evidence that throughout 2003 union executives made it clear to him that they knew that he was making those complaints and that they did not approve. His evidence showed that despite allowing him to have a reduced-fee card in April and July without signing the book, that he was denied the reduced-fee card at the next opportunity after the union officials stated publicly at a union meeting that they were considering "going after" him for his complaints. In the end, the jury had sufficient evidence before it to allow a reasonable inference that the union denied him his reduced-fee card in retaliation for his complaints, not for failing to sign the out-of-work book. Of course, the union officials testified that they had no retaliatory motive. But where, as here, a jury was faced with weighing the credibility of witnesses, "neither side is entitled to judgment as a matter of law unless objective evidence shows that it would be unreasonable to believe a critical witness for one side." *Payne v. Milwaukee County,* 146 F.3d 430, 433 (7th Cir. 1998) (quoting *Kasper v. Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1173 (7th Cir. 1998)). The jury apparently believed Burger's version of events. The district court was correct to deny the union's motion for judgment as a matter of law.

The union makes a short argument that, in the event that we reverse the district court's denial of judgment as a matter of law, the award of fees and costs should be reversed also. Because we affirm the judgment of the district court, this argument fails as well. Given that the union does not challenge the validity or the amount of the attorney's fees awarded by the district court, we affirm the judgment of the district court on the separate question of fees and costs.

We turn then to the question of damages. The parties both agreed at oral argument that they will never again use the same verdict form that they came up with for this case. The form provided the jury the opportunity to indicate whether they found for the plaintiff or defendant on both of the counts, and it provided a place under each count for the jury to make an award of damages. Each count had lines for damages in compensation for back pay, for lost future earnings, and for mental and emotional pain and suffering.[1] On count one, the ADEA retaliation claim, the jury awarded $25,000 in back pay, $6,000 in lost future wages, and $2,000 for mental and emotional pain and suffering. In the lines on count two, the LMRA failure to represent claim, the jury filled in numbers that were exactly double the amounts listed in the lines for count one: $50,000, $12,000 and $4,000, respectively.

This presents a problem, as the district court and the parties soon realized. The parties agreed ahead of time that there could be only one amount of damages for lost back wages. *See Collins v. Kibort,* 143 F.3d 331, 339-40 (7th Cir. 1998) (remanding for new trial on damages given the possibility that back wages were impermissibly awarded twice for two separate legal theories of liability).

---

[1]  A copy of the verdict form returned in the case is attached to this opinion.

The damages for lost back pay would be the same regardless of whether he prevailed on count one, count two, or both counts, because the lost wages all stemmed from losing his union card, regardless of whether he lost it for retaliation for his age discrimination complaint or for the union's failure to represent his interests. Burger suggests that they had provided separate lines under both counts so that the jury could make that award if it found in Burger's favor on either one count or the other, but not both.

It seems from the transcripts that the parties had an inkling that the form would confuse the jury. Burger's attorney attempted to clarify the form during closing argument: "[U]nder each count, you're going to be asked the same questions about damages. And because each count is based on the same harm, which is the loss of his reduced card, your answer should be the same." Tr. at 392. And then later: "In these two different counts . . . it's the same injury, so it should be the same amount on count 1 as you determine in count 2." Tr. at 417. Unfortunately, the jury did not put the same amount on count one as they did on count two.

The jury form and the numbers that the jury placed in those two lines could mean one of three different things. They could have found that Burger lost $75,000 in back wages, which they then attempted to allocate between the two counts by placing $25,000 under count one and $50,000 under count two. The fact that the damages for count two were exactly twice the damages on count one across the board lends some credence to this theory. Or they could have found that Burger lost a total of $50,000 in back pay, which they allocated $25,000 to count one and $25,000 to count two, but faced with a verdict form that did not have a line for total lost wages, they simply placed the total of $50,000 in the line under count two. Or they might have found that he lost a total of $25,000 in back

pay. But this third option seems particularly unlikely given that it does nothing to explain how $50,000 ended up on the line in count two.

So in all likelihood it seems that the jury either awarded $75,000 in back pay, split disproportionately in favor of count two, or the jury awarded $50,000 divided equally. Both results contradicted the theory of damages that Burger attempted to convey to the jury. And more significantly, both awards would be inconsistent with the fact that all back wages in this case had to have stemmed from the same injury, regardless of the legal theory under which the damages were sought. Because neither interpretation of the jury's verdict can be squared with the requirement that Burger's lost wages must be the same regardless of whether liability exists under count one, count two, or both counts, we must regrettably remand the case for a new trial on damages only. The lost wages can only be recovered once, but because the jury found in favor of Burger on the retaliation count, the total back wages will be subject to doubling by the district court on remand under 29 U.S.C. § 626(b) as liquidated damages for willful discrimination.

The union has raised the argument in this appeal that the damages awarded by the jury are, at any rate, inconsistent with the evidence. The union believes that the most that the jury could have awarded would have been the difference between the cost of a reduced-fee card and the cost of a full-fee card. By this theory, Burger had an obligation to mitigate his losses by paying the full amount for a union card. If he had paid the full fee, the argument goes, he would have been able to work and would not have lost any wages. But this ignores two arguments that Burger made to the jury. He presented evidence that he could not afford to pay the full-fee card because he was out of work and had to borrow money just to get the reduced-fee card. He also presented evidence that could

have allowed the jury to infer that the union was simply using the reduced-fee versus full-fee controversy as a pretext for its ultimate goal: forcing Burger out of the union. The jury's verdict, and the original award of damages, is consistent with the belief that one or the other (or both) of these theories was correct, so an award of damages above the cost of the full-fee card is not inconsistent with the evidence, and remains among the range of possible recoveries on remand.

## III.  CONCLUSION

Accordingly, the judgment of the district court with respect to attorney's fees and costs is AFFIRMED. The judgment of the district court entered on the jury's verdict is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAY - 3 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

ROBERT M. BURGER,                          )
                                           )
            Plaintiff,                     )
                                           )
    v.                                      )        Case No.  03 C 8068
                                           )
INTERNATIONAL UNION OF                     )        Judge Virginia M. Kendall
ELEVATOR CONSTRUCTORS,                     )
INTERNATIONAL UNION OF                     )
ELEVATOR CONSTRUCTORS                      )
LOCAL No. 2, and MID-AMERICA/              )
PHOENIX ELEVATOR COMPANY                   )
                                           )
            Defendants.                    )

**DOCKETED**

MAY 5 _ 2006

## JURY VERDICT FORM

** You must complete the verdict form for <u>all counts</u>. **

We, the jury in this action, unanimously find on Robert M. Burger's ("Mr. Burger") claims against the International Union of Elevator Constructors Local No. 2 ("Local No. 2") as follows:

### I.    Finding on Mr. Burger's ADEA Retaliation Claim

(Check only one line)

_____✓_____  <u>For</u> Mr. Burger and <u>against</u> Local No. 2

_____  <u>For</u> Local No. 2 and <u>against</u> Mr. Burger

If you have found for Local No. 2 and against Mr. Burger on Mr. Burger's ADEA Retaliation Claim, skip the following questions and go to Section II. If you have found for Mr. Burger and against Local No. 2 on Mr. Burger's ADEA Retaliation Claim, you are to fill in the following blank lines pertaining to damages:



We, the jury, hereby award Robert M. Burger actual damages **for back pay,** minus the amount which Local No. 2 has proven he could mitigate his damages, in the total amount of:

$ _25,000_ (fill in amount) against Local No. 2.

We, the jury, hereby award Robert M. Burger actual damages for **lost future earnings,** minus the amount which Local No. 2 has proven he could mitigate his damages, in the total amount of:

$ _6,000_ (fill in amount) against Local No. 2.

We, the jury, hereby award Robert M. Burger actual damages for **mental and emotional pain and suffering,** minus the amount which Local No. 2 has proven he could mitigate his damages, in the total amount of:

$ _2,000_ (fill in amount) against Local No. 2.

## II.    Finding on Mr. Burger's LMRA Breach of Duty of Fair Representation Claim

(Check only one line)

_✓_ For Mr. Burger and against Local No. 2

_____ For Local No. 2 and against Mr. Burger

If you have found for Local No. 2 and against Mr. Burger on Mr. Burger's LMRA Breach of Duty of Fair Representation Claim, skip the following questions and have the foreperson sign and date the final page of this document. If you have found for Mr. Burger and against Local No. 2 on Mr. Burger's LMRA Breach of Duty of Fair Representation Claim, you are to fill in the following blank lines pertaining to damages:

We, the jury, hereby award Robert M. Burger actual damages **for back pay,** minus the amount which Local No. 2 has proven he could mitigate his damages, in the total amount of:

$ _50,000_ (fill in amount) against Local No. 2.

2

We, the jury, hereby award Robert M. Burger actual damages **for lost future earnings**, minus the amount which Local No. 2 has proven he could mitigate his damages, in the total amount of:

$ 12,000 _____ **(fill in amount)** against Local No. 2.

If you have found for Mr. Burger and against Local No. 2 on Mr. Burger's LMRA Breach of Duty of Fair Representation Claim, do you find that Local No. 2's conduct was outrageous?

___✓___ Yes                    _____ No

If your answer to the above is yes, answer the following. If not, skip the following question and have the foreperson sign and date the bottom of this page.

We, the jury, hereby award Robert M. Burger actual damages **for mental and emotional pain and suffering**, minus the amount which Local No. 2 has proven he could mitigate his damages, in the total amount of:

$ 4,000 _____ **(fill in amount)** against Local No. 2.

_____
Foreperson

_May 2nd 2006_____
Date

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*