In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 16-4197

PRIME CHOICE SERVICES, INC.,

*Plaintiff-Appellant,*

*v.*

SCHNEIDER LOGISTICS TRANSLOADING AND DISTRIBUTION, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-cv-01435-WCG — **William C. Griesbach**, *Chief Judge.*

_____

ARGUED MAY 24, 2017 — DECIDED JUNE 28, 2017

_____

Before POSNER, MANION, and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* Defendant Schneider is a logistics firm—a firm that manages the flow and storage of goods, in order to meet a customer's requirements. A branch of Schneider's business was and we assume still is located near Savannah, Georgia. Freight entering the port of Savannah was trucked to Schneider's building, unloaded on one side, sorted, and then reloaded on the other side of the building

onto outgoing trucks; such reloading is called in the trade "cross docking." Prime, the plaintiff, sought to do the cross-docking work and after multiple discussions was hired by Schneider to do so. Prime was to be paid for what it moved. It was paid, but for the most part not paid timely and not paid enough to break even, let alone make a profit, and it complained about that and also about a lack of communication from Schneider concerning assignments to Prime and support for its labors. The final straw for Prime was Schneider's failure—without explanation—to pay Prime $82,464.71 for services that Prime had rendered to it. Not being paid, Prime removed its employees from Schneider's Savannah building; and eventually brought this suit for the money it claimed to be owed, which had now climbed, according to Prime and not contested by Schneider, to $289,059.95. Schneider responded that Prime's repudiation of the contract by removing its employees from Schneider's building had caused Schneider damages of $853,401.49, amounting to a net loss to that company of $564,341.54 ($853,401.49 - $289,059.95). The case went to the jury on Schneider's counterclaim. The jury was asked to answer two questions. The first was whether Prime had repudiated its contract with Schneider, and the second was, if so, what Schneider's damages were. The jury answered yes to the first question, zero to the second.

Schneider moved for a new trial under Fed. R. Civ. P. 59, limited to damages. Rule 59, though vague (see subsection (a)(1)) has been interpreted to give a trial judge "ample power to prevent what he considers to be a miscarriage of justice. It is his right, and indeed his duty, to order a new trial if he deems it in the interest of justice to do so." *Juneau Square Corp. v. First Wisconsin National Bank of Milwaukee*, 624 F.2d

798, 806 n. 11 (7th Cir. 1980). That of course is imprecise; "interest of justice" is so vague that read literally it would give the judge carte blanche to set aside a jury verdict. And that can't be right; a judge can't set aside a jury verdict just because had he been a member of the jury he would have voted for a different verdict. Such a power would emasculate the jury system. As explained in *Latino v. Kaizer*, 58 F.3d 310, 315 (7th Cir. 1995), a judge is permitted to grant a new trial because the jury's verdict was against the weight of the evidence "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict … cries out to be overturned or shocks our conscience." The judge in this case did set aside the jury verdict, ordered a new trial before a different jury, and submitted only the issue of damages (question number 2 in the first trial) to that jury, which awarded Schneider $853,401.49 in damages. After the court accounted for Prime's uncontested losses, however, Schneider's award was reduced to $564,341.54. But the judge was wrong to set aside the first verdict, odd though it was. He thought the first jury had contradicted itself by finding that Prime had repudiated its agreement with Schneider yet awarding Schneider no damages for the repudiation. But a rational jury could find that a zero damages award would (in the language of the second question posed to the jury) fairly compensate Schneider; to put it more bluntly, the jury could find that Schneider deserved no more. The first jury may have concluded that Schneider had failed to mitigate its damages. It may have thought that had Schneider simply paid Prime what it owed it, Prime would have returned to work and Schneider would have avoided incurring any damages. The jury was not told that Schneider was entitled to damages despite its having made no attempt to resolve

the payment dispute with Prime. The judge overlooked this possibility, a legally sufficient basis for the first jury's refusal to award any damages to Schneider.

Notice too that dealing with a much smaller firm (Prime's quarterly revenues most likely never exceeded $1 million, while Schneider's parent company had operating revenues of $1 billion in the first quarter of 2017, see "Schneider National, Inc. Reports First Quarter 2017 Results," *Business Wire*, May 11, 2017, www.business wire.com/news/home/20170511005293/en/), Schneider had undoubtedly hurt little Prime more by failing to pay on time the $289,059.95 it owed Prime than Prime had hurt Schneider by causing it to pay $853,401.49 more for the cross-docking work than it would have had Prime not repudiated the contract, spread out over a few months—peanuts to such a large firm. And finally in the second trial the judge had arbitrarily excluded evidence favorable to Prime, such as Schneider's failure to make timely payment of the money owed Prime, and the relative size and financial condition of the two firms. In short, the first verdict, awarding no damages to Schneider, was reasonable, and we hereby instruct the district court to reinstate it and order the second verdict and the judgment entered in conformity with it vacated.

VACATED AND REMANDED.

MANION, *Circuit Judge*, dissenting. Dissatisfied with delayed payments and locked into a negative return contract, Prime Choice withdrew its workers from the job site. When the Prime workers didn't show up, Schneider had to quickly round up qualified replacements. That required higher wages. Schneider sued Prime Choice and a jury found that Prime Choice breached its contract, but nevertheless awarded zero damages to Schneider. In this appeal, the court finds that it was an abuse of discretion for the trial judge to order a new trial on damages only. Because of the obvious inconsistency in the first jury verdict, I would sustain the order of the district judge granting a new trial on damages

This contract case reads a bit like a broken engagement. Prime Choice entered into a contract with Schneider by promising more than it could deliver: in this case, to provide labor at sub-market rates. For its part, Schneider never paid its invoices on time. Anticipating that Prime Choice couldn't keep up, Schneider would occasionally seek supplemental labor contracts with other companies. For five months Schneider also, gratuitously, paid Prime Choice extra money. Still Prime Choice was stuck in a losing contract. Schneider was fine with the rates, but it knew that it couldn't fully rely upon Prime Choice. Both sides were less than satisfied with the arrangement, but they kept communications lines open and tolerated each other's' faults. That is, until Prime Choice threw in the towel and repudiated the contract.

While one could understand why a company would seek to exit a losing contract, that company should be expected to accept the consequences of that exit. In the first trial, both parties agreed that Schneider owed Prime Choice $289,059.95 in unpaid invoices. Certainly, this non-payment is relevant to why Prime Choice decided to repudiate the contract. It is not relevant, however, to what damages Schneider suffered when Prime Choice walked off the job. It is undisputed that Schneider suffered more than zero damages when this occurred. It follows that the district judge did not abuse his discretion by ordering a new trial on damages.

The court today correctly notes that it would "emasculate the jury system" were a trial judge empowered to order a new trial whenever "he would have voted for a different verdict" had he been a member of the jury. Fed. R. Civ. P. 59(a)(1) has some limits. The text of the rule allows for displacing a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court," an explicit reference to positive law and settled practice.

Our case law delimiting Rule 59 can be broken down quite plainly. Reasonable, but wrongheaded jury verdicts cannot be disturbed. The Seventh Amendment commands this. Conversely, unreasonable jury verdicts, such as verdicts that are contrary to the manifest weight of the evidence, cannot stand. When a district judge denies a motion for a new trial, to prevail on appeal the moving party must demonstrate that the verdict was unreasonable: that it was against the manifest weight of the evidence *or* was otherwise arbitrary or unjust. By contrast, when a district judge grants a motion for a new trial, the appellant seeking to reinstate the original verdict must show that the district judge abused its discretion, demonstrating both that the original verdict was reasonable *and* that there was nothing unjust about the original verdict. The reasonableness of a jury verdict is presumed greatest where disputes at trial are factual, rather than legal in nature. While it is true that jury verdicts should not be wantonly disturbed by a district judge, that judge's decision to overturn a jury verdict is still entitled to substantial deference, reviewed only for "abuse of discretion." *See McClain v. Owens-Corning Fiberglass Corp.*, 139 F.3d 1124, 1127–28 (7th Cir. 1998) (finding no abuse of discretion in a grant of a new trial solely on damages even where law supported "either the grant or denial of a new trial"); *see also Vojdani v. Pharmsan Labs, Inc.*, 741 F.3d 777, 781–82 (7th Cir. 2013).

In this case, a short review of the district court record clearly shows that the $0 jury verdict was contrary to the manifest weight of the evidence. The uncontroverted facts in the record show that Prime Choice was locked into a contract more favorable to Schneider and the labor market in Savannah was very tight. So when Prime Choice abandoned

the job, Schneider was put in the difficult position of having to find many workers on short notice, a major and expensive obligation. In other words, *all* the record evidence shows that Schneider was harmed when Prime Choice quit. Schneider was not in the same position, but in an undisputedly worse position once Prime Choice repudiated the contract, withdrawing its workers. While this possibly could have sustained a more modest damage award, it could not support zero damages. As the district judge noted, "Prime Choice's strategy during trial consisted primarily of contesting liability, not damages. Prime Choice called no expert to refute Schneider's calculations and expert witness testimony [or to] contest Schneider's damages calculations[, nor did they] present any independent documentary evidence challenging Schneider's calculation of damages." The only conceivable basis for the $0 jury verdict is that the jury believed Schneider to be a deep pocket, and could easily absorb the loss. Thus, not only was the verdict contrary to the manifest weight of the evidence, but it was arbitrary.

In seeking to avoid reading Rule 59 as a "carte blanche" for a district judge to overturn jury verdicts, the court today goes too far in the other direction. It holds that it is improper for a district judge to order a new trial *even where* the only conceivable basis for the jury verdict that does not rely upon internal inconsistency is that damage to that large-sized party was "peanuts." In other words, the court endorses the first jury's erasing Schneider's damages as a punitive award simply because it is big and can easily afford the loss. It *might* be true that Schneider could have avoided the whole situation by paying Prime Choice on time: but this isn't a question of damages, but of contract repudiation—an issue not now before the court. So surely if "miscarriage of justice" is to mean anything, it must apply to a situation where a jury was misled into awarding no damages to a party purely out of animus towards large companies. Since ordering a new trial limited to damages on either basis would not be an abuse of

discretion, I would thus have affirmed the district court's decision.[1]

---

[1] I also do not believe the evidentiary rulings of the district judge in the second trial were improper. Yet even if they were improper, the remedy would be remanding for a third trial, not reinstating the irrational first verdict.